**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>　　　　Petitioner,<br><br>v.<br><br>Melvin Wing,<br><br>　　　　Respondent. | Case No. 13-cv-151 (JNE/DTS)<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

This Court is called on to decide whether to revoke Respondent Melvin Wing's conditional release from civil commitment under 18 U.S.C. § 4246(f). If it is determined, (1) "in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment," (2) Wing's "continued release would create a substantial risk of bodily injury to another person or serious damage to the property of another," 18 U.S.C. § 4246(f) permits this Court to remand Wing to the custody of the Attorney General for treatment in a "suitable facility." Because Wing has failed to comply with multiple conditions of his release and poses a substantial risk of bodily injury to another person, this Court recommends that the Government's Second Motion for Revocation of Conditional Release (Dkt. No. 77) be GRANTED and Wing be remanded to the custody of the Attorney General.

## FINDINGS OF FACT

### First Commitment

On March 1, 1996, the United States District Court for the District of Minnesota sentenced Wing to 240 months' imprisonment after he pleaded guilty to second-degree

murder and assault with intent to commit murder. Dkt. No. 1, Ex. A. According to Wing, he killed one man and almost killed another using a bat and a knife, while under the influence of drugs, because they "started laughing and had an attitude" and had mentioned a prior criminal offense of his. Dkt. No. 91, at 107-08.

Prior to his release in January 2013, the Government petitioned for an evaluation of Wing's mental health condition, pursuant to 18 U.S.C. § 4246. Dkt. No. 1. After an evidentiary hearing, the Court found Wing to be suffering from a mental disease or defect the result of which would create a substantial risk of bodily injury to another, should he be released. Dkt. No. 20. The Court concluded that Wing needed hospitalization in a suitable psychiatric facility and ordered him committed to the custody of the Attorney General. Dkt. No. 20.

**First Conditional Release**

In December 2015, the Government moved for Wing's conditional release, having determined, per a Risk Assessment Report (Dkt. No. 23, Ex. A), that Wing had recovered from his mental disease or defect to such an extent that he no longer created a substantial risk of bodily injury to another. Dkt. No. 22. Wing had been compliant with medication and "functioning well in general population." Dkt. No. 23, Ex. A.

The Court granted the Government's petition and released Wing, subject to certain conditions. Dkt. No. 24. Of note, the Court directed Wing to reside in Great Falls, Montana under the supervision of Probation Officer Thomas Kelly, participate in mental health and psychiatric treatment, and remain compliant with all medication administration. Dkt. No. 24.

Officer Kelly supervised Wing's transition into the community. Upon release, Wing resided in a hotel and later in a group home. Dkt. No. 91, at 5. Officer Kelly helped him secure Medicaid services, Social Security benefits, foods stamps, housing assistance, and medical care. *Id.* at 6. When Wing experienced mental health symptoms, he underwent voluntary inpatient hospitalization at the psychiatric unit of the local hospital. *Id.*

In September 2017, local authorities sought to commit Wing to the Montana State Hospital after he "reported paranoid thoughts about the government and others, and concerns with adjusting to community expectations after his long period of incarceration." Dkt. No. 37, at 8. This request was granted; Wing entered the state hospital on October 4, 2017. *Id.*

Following this commitment, Wing resided at group homes administered by the Montana Department of Health and Human Services from October 4, 2017 to October of 2020. Dkt. No. 91, at 7. These homes provided food, shelter, and day activities, administered medication, and assisted with transportation to appointments. *Id.* Officer Kelly supervised Wing throughout this period. *Id.* at 7-8.

During this time, Wing continued to experience mental health symptoms, including auditory hallucinations and delusions for which he had three voluntary hospitalizations and two evaluations at the local hospital. *Id.* at 8. While being evaluated, he reported hearing derogatory and threatening voices and wanting to retaliate against them. *Id.*

In August 2020, Wing's mental health began to deteriorate. Wing refused to return to his group home because he believed the group home staff was "out to get

3

him." Dkt. No. 37, at 9. He warned his case manager that if someone approached him, "It will get ugly." *Id.* Upon visiting him in the local hospital, staff members from the group home reported he "did not look like the person they had come to know" and that they felt unsafe being alone with him. *Id.* Wing was hospitalized for eleven days, after which he returned to the group home.

On October 9, 2020, Wing engaged in a fight with another individual at the group home. *Id.*; Dkt. No. 91, at 99-10. Officers responded and determined the fight was mutual. Dkt. No. 91, at 8; Dkt. No. 37, at 9. At the hearing on this petition, Wing testified that he was attacked and was defending himself. Dkt. No. 91, at 100. He had previously disclosed concerns that the other resident and his peers were "out to get [him]" or "going to kill [him]." Dkt. No. 37, at 8. Officers escorted both parties to the hospital; the other resident was treated for injuries and Wing received a psychiatric evaluation. *Id.* at 9. Following this incident, the group home director determined that Wing could not return to residence because he posed a "significant physical risk" to the staff and other residents. *Id.*

The Government moved to revoke Wing's conditional release on October 13, 2020. Dkt. No. 29. Because he had failed to comply with the conditions of his release, Wing was returned to federal custody for further examination. Dkt. No. 32.

**Revocation Assessment and Hearing**

Wing arrived for examination at the Federal Medical Center in Rochester, Minnesota (FMC-Rochester) on February 3, 2021. Dkt. No. 37, at 10. On March 2, 2021, A risk assessment panel consisting of two psychologists and a psychiatrist evaluated whether he met civil commitment criteria. *Id.* at 15. The panel concluded that

4

Wing required hospitalization and that his continued release would create a substantial risk of bodily injury to others. *Id.* at 25. Though the panel members acknowledged their limitations in predicting future violence, they cited Wing's "poor insight, violent ideation or intent, and symptoms of major mental illness" as the bases of their conclusion. *Id.* at 22. Further, they expressed concern regarding the lack of a suitable alternative conditional release plan for Wing, absent which "he would be at significant risk for engaging in behaviors that compromise the safety of others." *Id.* at 24. Even so, the panel remained optimistic about Wing's likelihood of "cooperation with mental health treatment, medication compliance, and cooperation with staff and peers" at FMC-Rochester. *Id.* at 25.

The risk assessment panel reconvened in September of 2021 to consider Wing's progress. Dkt. No. 69. The panel reaffirmed that he required structured activities, support persons, stable living arrangements, and access to treatment but concluded it was possible to pursue a conditional release plan. Dkt. No. 69. The panel recommended that Wing reside at Montana Mental Health Nursing Care Center, a long-term residential facility for "persons with mental disorders [] who require a level of care not available in the community." Dkt. No. 69. Based on this recommendation, the parties filed a joint motion to vacate the revocation hearing. Dkt. No. 50. The Government subsequently filed a motion for Amended Order for Conditional Release. Dkt. No. 67.

**Second Conditional Release**

On April 26, 2022, the Court granted the Government's motion and ordered Wing released on certain conditions. Dkt. No. 76. The Order required Wing (1) to reside at the Montana Mental Health Nursing Care Center, (2) to participate in and cooperate with all

5

mental health and psychiatric care, (3) to comply with the administration of all medication, and (4) to refrain from engaging in any threatening communications. Dkt. No. 76.

Wing arrived at the Montana Mental Health Nursing Care Center on May 9, 2022 and resumed supervision under Officer Kelly. Dkt. No. 91, at 10. Initially, he adjusted well to the conditions of his release, but Officer Kelly noted his mental health again began to deteriorate during a contact visit on September 12, 2022. *Id.* at 11-12. Upon meeting with Officer Kelly, Wing became agitated, claiming employees and patients at the facility were consumed by the devil and out to get him. *Id.* at 12. He believed they were conspiring to stab, assault, and rape him. *Id.* at 12. On the evening of September 12, 2022, Wing refused to take sleeping medication. Pet. Ex. 7.[1] Only after hearing that Officer Kelly was on the phone did he comply with his medication administration. Dkt. No. 91, at 17. After consultation with Officer Kelly, the treating psychiatrist decided Wing needed to be removed from the facility. *Id.* at 13. His discharge paperwork reads, "Melvin psychiatrically decompensated and began threatening to kill staff and peers." Pet. Ex. 4. The facility indicates he is not welcome to return. Pet. Ex. 7.

Wing was transported the next day to Montana State Hospital. On September 14, 2022, after arriving at Montana State Hospital, he had another incident during which he refused medication. Pet. Ex. 3, at 13, 18. As a result, the State Hospital refused to admit him. *Id.*

The Government moved on September 15, 2022 to return Wing to federal custody for violating his conditions of release and posing a substantial risk of bodily

---

[1] Pet. Ex. refers to Petitioner's exhibits that were received into evidence at the May 19, 2023 hearing.

6

injury to another person. Dkt. No. 77. The Court issued a warrant to transfer Wing back to FMC-Rochester. While being transported, Wing wrote to the Court threatening to "beat" and "burn" Officer Kelly. Dkt. No. 82.

Wing arrived at FMC Rochester on October 14, 2022. Pet. Ex. 3, at 13. Upon arrival, he was reevaluated by the risk assessment panel, which made its recommendation to this Court. Pet. Ex. 3. On May 19, 2023, the Court held a hearing to consider Wing's continued commitment. Dkt. No. 87.

**Risk Assessment Report**

The risk assessment panel unanimously concluded that releasing Wing would create a substantial risk of bodily injury to another person on account of his mental illness, history of violence, and lack of stable relationships and community support. Pet. Ex. 3, at 25. To reach its conclusion, the panel conducted interviews, performed an extensive review of Wing's personal and medical history, and considered alternatives to commitment. The panel also utilized the Historical Clinical Risk Management-20, Version 3 (HCR-20$^{v3}$), a comprehensive tool that assesses twenty risk factors empirically linked to predictions of future violence. *Id.* at 20.

The panel identified a clear connection between Wing's mental health symptoms and his risk of engaging in violent behaviors. *Id.* at 21. Wing was diagnosed with schizophrenia in the 1970s and continues to exhibit symptoms of the disease. *Id.* at 16; Dkt. No. 91, at 49. The illness causes him to experience persecutory and paranoid delusions, during which he believes others are plotting to harm or kill him, and erotomaniac delusions, during which he misinterprets the physical actions of others as sexual or romantic. Dkt. No. 91, at 49-51; Pet. Ex. 3, at 21. Wing also experiences

hallucinations, during which he hears voices that say harmful things. Dkt. No. 91, at 50-51. The panel found that Wing is "most prone to engage in threatening and physical aggression in response to delusions involving perceived threats to his safety or wellbeing." Pet. Ex. 3, at 21.

The report found that Wing experiences episodes of decompensation when he fails to comply with treatment or medication recommendations. *Id.* The panel noted Wing's history of failing to comply with treatment and supervision plans has resulted in "deterioration with recurrence of psychotic symptoms." *Id.* at 22. When asked if he would continue to take medication if released, Wing confessed, "If it wasn't required I wouldn't take it. But I don't trust my actions without medications. If it was required, I would take it." *Id.* at 19.

The panel indicates that Wing also lacks insight into his illness, which exacerbates his risk of violence. *Id.* at 24; Dkt. No. 91, at 61-62. Wing recognizes that he is diagnosed with a mental illness but fails to appreciate the impact of his diagnosis upon his thoughts and actions. Pet. Ex. 3, at 24. "When asked whether he thinks he has a mental illness, Wing replied, 'Everybody has a mental illness.'" *Id.* at 17. Further, Wing often fails to understand that his delusions are symptoms of his schizophrenia, rather than objective reality. *Id.* at 24. For example, when asked why he refused medication at the Montana Mental Health Nursing Care Center, Wing replied:

> The reason I did not want to take the medication is because Ted Harper broke two of my guitars. He wanted to stab me. Staff encouraged him to stab me… I didn't want the medication. I didn't think I needed it. I had no intentions of letting him harm me. I know you would say this is delusions, and my delusions are advancing, but I saw what he was doing.

*Id.* at 18. This lack of insight prevents Wing from recognizing that his condition has contributed to his violent words and actions. *Id.* at 24. When asked about his letter to the Court, in which he threatened to "beat" and "burn" Officer Kelly, Wing stated, "All I did was write the Judge and tell her what was going on." *Id.* at 19. The panel concluded that Wing's history with and manifestations of mental illness, along with his lack of insight regarding his condition, elevate his risk of future violence.

The panel also investigated Wing's past occasions of violence, indicating that "past violence is the single best predictor of future violence." *Id.*; Dkt. No. 91, at 51-52. The panel considered actual, attempted, and threatened violence in which Wing had engaged. Dkt. No. 91, at 51. These instances included vehicular homicide, instances of aggression using both a bat and an ax, murder, assault, and threats of violence, among others. Pet. Ex. 3, at 13-15. The panel used its professional judgment, in combination with HCR-20$^{v3}$, to conclude that Wing's significant history of violent behavior supported the conclusion that he posed a significant risk to the person of another if released. *Id.* at 13.

Finally, the panel considered Wing's community and familial supports to forecast his "psychosocial adjustment" were he to be released. *Id.* at 24. The report noted Wing's history of problems with education and employment, as well as his failure to maintain relationships with family and community members. *Id.* at 22. According to the panel, Wing requires a highly structured living situation with monitoring and supervision to manage his risk of violence by ensuring access to and compliance with medication and treatment. *Id.* at 24-25. As a result, he has responded well to inpatient treatment but has failed to conform to his requirements when on supervised release. *Id.* at 21, 23. The

panel emphasized that Wing needs daily contact with mental health professionals to monitor his symptoms and identify relapse warning signs. *Id.* at 24. Such a plan is not currently available for Wing in the community. *Id.* at 24. For these reasons, the risk assessment panel recommended that Wing remain at FMC-Rochester, where he currently shows signs of improvement and stability. *Id.* at 23-24.

## CONCLUSIONS OF LAW

When an individual having formerly been committed under 18 U.S.C. § 4246 violates the conditions of his release, the Government may move to recommit the individual to the custody of the Attorney General. After a conditional release revocation hearing, 18 U.S.C. § 4246(f) permits a court to remand an individual to a "suitable facility," if it is determined that, (1) "in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment," (2) "his continued release would create a substantial risk of bodily injury to another person or serious damage to the property of another." While the statute is silent regarding the Government's burden of proof, courts addressing the issue have required the Government to prove both elements by a preponderance of the evidence. *See United States v. DiGiulio*, No. 07-4770, 2017 WL 354863, at *11 (D. Minn. Jan. 4, 2017). The Government has shown by a preponderance of the evidence that Wing has failed to comply with the prescribed conditions of his release and his continued release would create a substantial risk of bodily injury to another person; therefore, this Court recommends that his conditional release be revoked.

10

**I.     Failure to comply with the conditions of release**

According to the Eighth Circuit, "Generally, a patient's violation of the rules of a medical facility is a sufficient reason for the court to revoke the individual's conditional release." *United States. v. Burleson*, 29 F. App'x. 412, 413 (8th Cir. 2002).

Wing has violated conditions 1, 3, 4, and 10 of the Court's Order for Conditional Release. Condition 1 requires Wing to reside at the Montana Mental Health Nursing Care Center. Dkt. No. 76. Because the facility discharged him and indicated he is not welcome to return after his decomposition presented a danger to staff and residents, Wing is unable to comply with this condition. Dkt. No. 91, at 13, Pet. Ex. 7. Wing concedes that he has violated this condition. Dkt. No. 102. Conditions 3 and 4 require Wing to cooperate with all mental health care directed by his probation officer and administered by his mental health provider, and to remain compliant in the administration of all medications. Dkt. No. 76. When Wing resisted medication at both the Montana Mental Health Nursing Care Center and Montana State Hospital, he violated these conditions. Pet. Ex. 3, at 13, 18. Finally Condition 10 requires Wing to refrain from any threatening communications with others, whether oral or written. Dkt. No. 76. His letter to the Court in which he threatened to "burn" and "beat" Officer Kelly violates this condition. Dkt. No. 82. Therefore, Wing has failed to comply with the regimen of medical treatment prescribed by the Court's Order for Conditional Release. Dkt. No. 76.

**II.    Substantial risk of bodily injury to another person**

Wing's mental illness and violent history cause him to pose a substantial risk of bodily injury to another person if released. When evaluating whether an individual poses

11

a substantial risk of bodily injury to another under 18 U.S.C. § 4246, a court must establish a nexus between the individual's mental condition and his dangerousness. *See United States v. Becerra*, 73 F.4th 966, 973 (8th Cir. 2023). However, the Eighth Circuit has held that "[o]vert acts of violence are not required to prove dangerousness." *United States v. LeClair*, 338 F.3d 882, 885 (8th Cir. 2003); *United States v. Ecker*, 30 F.3d 966, 970 (8th Cir. 1994) (holding that the last occasion of violence occurring ten years prior did not require a conclusion of not dangerous). Further, the Eighth Circuit has affirmed decisions to commit persons whose behavior has improved in controlled settings, but who would likely not take medication if released. *See, e.g.*, *United States v. Belknap*, 26 F. App'x 600, 601 (8th Cir. 2002). Because Wing has a mental condition that contributes to his dangerousness and has indicated he may not take medication if released, he poses a substantial risk of bodily injury to another person.

Wing experiences paranoid delusions and hallucinations that have resulted violent actions and continue to create a significant risk of violence. These delusions and hallucinations convince him he is being threatened or at risk, and he has shown a tendency to engage in threats and physical aggression in response. Dkt. No. 37, at 8; Pet. Ex. 3, at 21. Wing was diagnosed with "paranoid schizophrenia" in the 1970s, prior to committing murder in 1995. Between 1996 and 2007, Wing engaged in multiple instances of assault in prison, often believing inmates were plotting against him. Pet. Ex. 3, at 5. In 2020, Wing engaged in a fight when he believed a fellow group home resident was "out to get him" or "going to kill him." Dkt. No. 37, at 8. Most recently, in 2022, Wing became agitated because he believed employees and patients at his facility were consumed by the devil and conspiring to stab, assault, and rape him, to the point

that staff members at the Montana Mental Health Nursing Care Center felt unsafe. Dkt. No. 91, at 12. Wing's lack of insight into his condition prevents him from discerning when his condition contributes to his violent thoughts and actions and elevates his dangerousness. Pet. Ex. 3, at 18, 24.

Wing's lack of insight also causes him to believe he does not always need medication, which results in "deterioration with recurrence of psychotic symptoms." *Id.* at 22. He has resisted medication administration on multiple occasions and admitted that he would not take his medication if not required to. *Id.* at 13, 18-19. Thus, Wing poses a substantial risk of bodily injury to another person on account of his mental delusions and hallucinations, lack of insight into his condition, and risk of noncompliance with medication.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS that: Petitioner's Second Motion for Revocation of Conditional Release (Dkt. No. 77) be GRANTED and Wing be remanded to the custody of the Attorney General for treatment in a "suitable facility," pursuant to the Court's prior civil commitment order, Dkt. No. 20, and 18 U.S.C. § 4246(f).

Dated: October 27, 2023     ___s/David T. Schultz_____
                            DAVID T. SCHULTZ
                            U.S. Magistrate Judge